**ALFRED I. duPONT SCHOOL DISTRICT et al., Plaintiff below, Appellant,**

**v.**

**DELAWARE ALCOHOLIC BEVERAGE CONTROL COMMISSION, Defendant below, Appellee.**

Supreme Court of Delaware.

Argued May 14, 1975.

Decided July 25, 1975.

William Poole and Daniel F. Wolcott, Jr., Potter, Anderson & Corroon, Wilmington, and Thomas Herlihy, III, Herlihy & Herlihy, Wilmington, for plaintiff below, appellant.

Wheeler K. Neff, Deputy Atty. Gen., Wilmington, for defendant below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

DUFFY, Justice:

This appeal requires a ruling as to the duty of the Delaware Alcoholic Beverage Control Commission to give notice of its decision to grant a license to sell alcoholic beverage.

I

An application for an off-premises (package store) license was filed on April 25, 1973. Within the ten-day statutory period a petition signed by 115 area residents who opposed the application was lodged with the Commission. In statutory effect, the petition was a "protest" which required the Commission to hold a hearing on the application. 4 Del.C. § 541(b). The Commission mailed notice of the time and place of the hearing to each resident-protestant and to others in interest.

At the hearing three objections to the application were admitted into evidence: (1) the writing signed by the 115 residents, (2) a protest by officials on behalf of a nearby high school and a PTA chapter in the Alfred I. duPont School District, and (3) a protest by the President of the Retail Liquor Dealers Association of Delaware. The owners of a nearby licensed establishment appeared in opposition to the applica-

tion, as did 9 of the persons who had signed the protest petition.

The Commission determined to grant the license and under date of January 16, 1974 gave written notice thereof to the applicant, counsel for the nearby licensees, the President of the Dealers Association, the Superintendent of the School District, the President of the PTA, the Principal of the High School and two School District officials. The resident-signatories of the protest did not receive any notice of the decision from the Commission.

An appeal from the decision was timely filed for the School District in the Superior Court by five members of the Board of Education. The Commission moved to dismiss on the basis that five appellants did not constitute a "party" for appeal purposes. § 541(c). Relying on *Ahner v. Delaware Alcoholic Beverage Con. Com'n*, Del., 237 A.2d 706 (1967), the Superior Court found that it did not have jurisdiction and dismissed the appeal because fewer than ten protestants do not constitute "a party" within the meaning of the statute. This appeal followed.

II

The School District argues that the signers of the protest which was admitted at the hearing were "parties to such hearing," § 541(c), and therefore entitled to notice of the decision. Failure to give notice to such parties, it says, is a bar to finality of the Commission's decision and thus the appeal period has never begun to run.

The Commission responds that it was not obliged to send notice to each of the 115 residents because only persons actually present at the hearing are entitled to receive it; under the Commission's view, such persons are "representatives" of absent protestants.[1]

---

1. This appears to be inconsistent with what in fact occurred: The 9 resident protestants

who appeared at the hearing were not given notice of the decision.

### III

4 Del.C. § 541 provides:

"(a) The Commission shall examine all applications for license as promptly as possible, and if it appears that any application should not be granted, the Commission shall so notify the applicant, stating the cause for refusal.

(b) If the Commission has determined to grant an application, but before . . . issuance of the license . . . and within 10 days of the filing of the application, a protest . . . signed by at least 10 residents of the neighborhood where the license is to operate, has been filed with the Commission, then a hearing shall be held to consider the application and protest. Ten days' notice of the hearing . . . shall be sent by registered mail to . . . the applicant, and a notice of the time of the hearing shall be sent to each of the persons who signed the protest; . . . . The hearing shall be conducted by the Commission and a record . . . shall be made . . . . The record shall include the evidence, the Commission's findings of fact, the Commission's decision, and a brief statement of the reasons therefor. . . .

(c) The Commission's decision shall be final and conclusive unless within 10 days after notice thereof a party to such hearing shall appeal to the Superior Court . . . . . the cause shall be decided by the Court from the record . . . . . . . ."

Initially, an applicant must comply in form and content with Title 4 (see 4 Del. C. § 502, etc.) and the Commission Rules. If that is done and there is no § 541(b) protest, the Commission may approve the application without hearing unless it has a reasonable basis for believing that a statutory ground for refusal exists in the record. § 543; *Moore v. Delaware Liquor Commission,* Del.Gen.Sess., 6 Terry 569, 77 A.2d 74 (1950).

An applicant's compliance with the publication requirements of § 524 and the Rules puts residents-at-large on notice that a license is being sought in the neighborhood. Any opposition to a license, to be legally significant, must be channeled into a § 541(b) protest signed by at least ten area residents. That protest is best described as jurisdictional in nature because it serves the limited purpose of requiring the Commission to hold a hearing on the application (if the Commission has otherwise decided to grant a license). See *Demarie v. Delaware Alcoholic Beverage Con. Com'n,* Del.Supr., 1 Storey 206, 143 A.2d 119 (1958). Absent such a protest the Commission may, of course, consider an application without hearing.

One effect of a protest is to expand the jurisdiction of the Commission so that it may look beyond the application and consider evidence of opposition. Thus under § 541(b) a "hearing shall be held to consider the application *and protest.*" (Emphasis added.) A jurisdictional protest is not in itself material evidence of opposition but it creates an opportunity to present such evidence on the record at the hearing.

A protest becomes material evidence of " . . . an absence of demand for the outlet in the locality . . . .", *Delaware Alcoholic Beverage Con. Com'n v. Allen,* Del.Supr., 227 A.2d 484 (1967), only when it becomes a part of the record. And this is significant because the Commission's decision must be based solely on the record, *Delaware Alcoholic Beverage Con. Com'n v. Allen,* supra, and by statute "the record shall include the evidence." § 541(b).

Admission into evidence of a written protest thus transforms signatories

from mere objectors or jurisdictional protestants to objectors of record. Such a position *vis-a-vis* an application then becomes something more than personal opinion; it is evidence of public necessity and convenience to be considered by the Commission and reviewing Courts. As we view the statutory scheme, objectors of record are not mere witnesses but participants in the hearing who demonstrate their interest and their "stake" in its result by committing their names to that record in support of a position.

■ When one becomes a party to the record, either by protest received into evidence or formal appearance in person or by representative, he becomes within the contemplation of the statute a "party to such hearing." As such, a record objector may aggregate toward the ten persons required to file an appeal under *Ahner*, supra; see *Application of Pepper*, Del.Gen. Sess., 4 Terry 568, 54 A.2d 173 (1947). Without notice of a Commission decision the right of appeal under § 541(c) is effectively abolished.[2]

### IV

■ We hold that the resident-signatories of the protest were parties to the hearing and, as such, they were entitled to notice of the Commission's decision. Since notice was not given to such parties, the Commission's decision cannot be given "final and conclusive" effect under § 541(c).[3] It follows that the judgment of the Superior Court must be reversed and the case remanded for proceedings consistent herewith.

2. There are three notice requirements built into the regulatory scheme: (a) an applicant must first publish an intent to apply for a license, § 524; (b) objection thereto, manifested by a jurisdictional protest, places a duty on the Commission to notify the protestants of the time and place of hearing, § 541(b); (c) a party to the hearing must be given notice of the decision. This plan involves a progression from one plateau to another in which a more select and interested class receives notice: first, the general public, then those who want a hearing and, finally, those whose position on the issue is manifested on the record at the hearing.

3. The Superior Court's reliance upon *Ahner* was mistaken; that case determined the number of protestants required to constitute a "party" for appeal purposes. The issue here concerns the right to notice of a Commission decision.